IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

W. NEIL ARMENTROUT and : 
FRANCES ARMENTROUT, :
 :
    Plaintiffs, :
 :
vs. : CA 10-0149-KD-C
 :
ATLANTIC CASUALTY INS. CO., :
 :
    Defendant. :

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on Plaintiffs' Motion to Remand, (Doc. 6) along with a supporting brief (Doc. 7), both filed April 15, 2010, Defendant's response (Doc. 12) to the motion, filed May 4, 2010, and Plaintiffs' reply (Doc. 15) thereto, filed May 18, 2010. After consideration of the motion, it is the undersigned's recommendation that it be **DENIED**.

I.    **Factual Background/Procedural History.**

On February 3, 2009, the Armentrout plaintiffs filed a complaint in the Circuit Court of Mobile County, Alabama, against Troy Clemens and Clemens Custom Pools ("The Clemens defendants"), seeking redress for the negligent and oft-delayed construction of a swimming pool at their Fairhope, Alabama residence. (Doc. 2-1, Complaint, p. 3.) On January 8, 2010, that Court granted a summary judgment in favor of the Armentrouts in the amount of $250,000. (Doc. 2-2, Order and Final Judgment of

January 8, 2010, p. 1.)

Then, on February 22, 2010, a writ of garnishment was issued against Atlantic Casualty Insurance Company ("ACIC"), the Clemens defendants' liability insurance provider, reflecting the quarter-million dollar judgment. (Doc. 2-3, Process of Garnishment, p. 1.) The garnishment action was given the same case number as the action which culminated in the summary judgment. (*Id*.)

ACIC removed the garnishment proceeding to this Court on March 31, 2010, averring that the garnishment proceeding is a "separate and independent action from the underlying action" against the Clemens defendants and noting that the time for the Clemens defendants to appeal from the summary judgment or file a post-judgment motion had expired. (Doc. 1, Notice of Removal, ¶¶ 4, 11.) The notice of removal asserts that complete diversity between the parties exists by virtue of the fact that the Armentrouts are residents of Alabama and ACIC is organized under the laws of and is headquartered in North Carolina. (*Id*. at ¶ 15.)

The Armentrouts filed a Motion to Remand (Doc. 6) On April 15, 2010, claiming that the removal of the action to this Court was improper for four reasons: (1) that only a "defendant" is entitled to remove an action, following 28 U.S.C. § 1441(a), and not a garnishee such as ACIC; (2) that complete diversity between the parties does *not* exist, because the garnishment proceeding is *not* a separate action, but rather an extension of the "ongoing" action between the parties; (3) that the action (to which the garnishment is but an extension) has been pending for more than one year, and therefore 28 U.S.C. §

1446(b) disallows such removal; and (4) that if the garnishment action is colorable as a "separate and independent action against a liability insurer," then 28 U.S.C. § 1332(c)(1) mandates that ACIC is deemed a resident of its insured, meaning of Alabama, another factor destroying the requisite diversity of citizenship for federal jurisdiction. (Doc. 6, pp. 1-2.) In their Memorandum in Support of [their] Motion to Remand (Doc. 7), also filed April 15, 2010, the Armentrouts re-characterized this last objection to removal as an assertion that the current garnishment proceeding is a direct action against ACIC, and therefore the citizenship of ACIC's insured, the Clemens defendants, is imputed to it, destroying the diversity of the parties. (Doc. 7, pp. 8-9.)

ACIC responded (Doc. 12) to the motion to remand on May 4, 2010, claiming (1) that the garnishment proceeding is indeed a separate and independent, not ancillary, proceeding; (2) that ACIC *is* a defendant entitled to move for removal; and (3) that the garnishment proceeding is *not* a direct action under 28 U.S.C. § 1332(c). In their reply (Doc. 15) to ACIC's response to their motion to remand, however, the Armentrouts again aver that ACIC is not a defendant entitled to removal by using Alabama law to cast doubt on whether a case or controversy existed at the time of removal, as under Alabama law, a dispute between a plaintiff and a garnishee is not ripe until the garnishee answers the process of garnishment and the plaintiff contests the garnishee's answer. (Doc. 15, p. 17.) In the same document, the Armentrouts also argue that this Court should refrain from exercising jurisdiction "in the interest[s] of comity, federalism, and judicial economy." (*Id*. at 8.)

## II. Discussion.

### A. *Legal Standards for Remand*

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000). Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).

"[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted) ("[T]he removing party bears the burden of demonstrating federal jurisdiction."); *Tapscott*, 77 F.3d at 1356 ("A removing defendant has the burden of proving the existence of federal jurisdiction."). Therefore, the burden in this case is on ACIC to establish complete diversity, or that each defendant is diverse from the plaintiff, *Triggs*, 154 F.3d at 1287

4

(citation omitted).[1]

B.     *The (In)Application of 28 U.S.C. § 1332(c)'s "Direct Action" Limitation*

The first of the crucial jurisdictional questions raised by Plaintiffs' motion to remand concerns the operation of 28 U.S.C. § 1332(c)'s "direct action" limitation. That statute provides, in pertinent part:

> [A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any *direct action* against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business . . .

28 U.S.C. § 1332(c)(1) (emphasis added). If the current garnishment proceeding is characterized as a direct action, then, complete diversity of citizenship will not be present, and this Court will lack the jurisdiction necessary to entertain this suit, as ACIC's insured (the Clemens defendants) are residents of Alabama, just like the Armentrouts. Although the question of whether a garnishment proceeding in Alabama, such as the one before the undersigned, is a "direct action" under the above statute is largely unsettled, it is the undersigned's opinion that the majority interpretation of Eleventh Circuit and old Fifth Circuit cases leads to the conclusion that it is not.

In *Fortson v. St. Paul Fire and Marine Ins. Co.*, 751 F.2d 1157 (11th Cir. 1985),

---

[1] There is no argument between the parties over whether the amount in controversy threshold has been met, as the garnishment proceeding seeks recovery for a judgment already entered against ACIC's insured in the amount of $250,000, as mentioned earlier.

the Court looked at the legislative intent behind the enactment of 28 U.S.C. § 1332(c):

> That section was enacted by Congress in order to eliminate the basis for diversity jurisdiction in states that allow an injured third-party claimant to sue an insurance company for payment of a claim without joining the company's insured as a party, where the insured would be a non[-]diverse party, even though the party insurance company would otherwise be diverse.

*Id*. at 1159 (citing *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721, 723 (5th Cir.) *cert. denied,* 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974)). The *Hernandez* opinion from which *Fortson* derived the above statement, however, states in relevant part:

> Congress intended that wherever a party claiming to have suffered injuries or damage for which another is legally responsible is entitled to sue the other's liability insuror [sic] without joining the insured *and without having first obtained a judgment against the insured*, the insurer shall be deemed a citizen of the State of which the insured is a citizen as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business, for the purposes of determining whether diversity jurisdiction exists.

*Hernandez*, 489 F.2d at 722 (emphasis added) (citing *Vines v. United States Fidelity & Guaranty Co.*, 267 F.Supp. 436 (E.D. Tenn. 1967)).[2]

The *Fortson* opinion, which ACIC partly relies upon in their argument that the current garnishment proceeding is not classifiable as a direct action, clearly limits the scope of § 1332(c):

> But where the suit brought either by the insured or by an injured third party is based not on the primary liability covered by the liability insurance policy[,] but

---

[2] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (1981), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to September 30, 1981.

6

on the insurer's failure to settle within policy limits or in good faith, the section 1332(c) direct action proviso does not preclude diversity jurisdiction. We hold that *unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured*, the action is not a direct action.

*Fortson*, 751 F.2d at 1159 (emphasis added) (internal citations omitted). From this holding, coupled with the recognition that courts "have uniformly defined the term 'direct action'. . . as those cases in which a party suffering injuries or damage for which another is legally responsible *is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him[,]*" it is inferred that garnishment actions in Alabama are not "direct actions." *Id*. (emphasis added) (citation omitted).

The relevant Alabama statutes supportive of this conclusion clearly require that a final judgment *must be obtained* before a garnishment proceeding or a claim against an insurer may proceed. Section 27-23-2 of the Alabama Code reads:

> *Upon the recovery of a final judgment* against any person, firm, or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury, or death or for loss or damage to property, if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.

Ala. Code 1975 § 27-23-2 (emphasis added). Section 6-6-390 states:

> The plaintiff in any pending action for the recovery of money or the plaintiff or assignee in any judgment on which execution can issue may obtain process of garnishment as defined in Section 6-6-370; provided, *that*

> *no garnishment shall issue prior to a final judgment*, pursuant to this section and Sections 6-6-291 through 6-6-294, unless there is a showing that such garnishment is necessary because of extraordinary circumstances.

Ala. Code 1975 § 6-6-390 (emphasis added).

A contrary view, however, has been expressed by the Middle District of Alabama, in *Wheelwright Trucking Co. v. Dorsey Trailers, Inc.*, 158 F.Supp.2d 1298 (2001). Judge DeMent found that "under the modern trend, a 'direct action' can include post-judgment garnishments brought by a judgment creditor against the judgment debtor's commercial insurer." *Id*. at 1301 (collecting cases). *See also Paca, Inc. v. Nat'l Union Fire Ins. Co.*, 2007 WL 98722 (M.D. Ala. Jan. 11, 2007) (same). These cases from the Middle District, however, are not found persuasive upon closer inspection. In *Wheelwright Trucking*, the Court stated:

> In this case, Wheelwright is the judgment creditor, Dorsey is the judgment debtor, and Liberty is the judgment debtor's insurer. Wheelwright has brought its writ of garnishment under Sections 6-6-370 *et seq.*, 27-23-1 and 27-23-2 of the Alabama Code. *These are direct action statutes*, for they allow Wheelwright to sue to collect from Dorsey's insurer, *i.e.* Liberty, without joining Dorsey in the same proceeding. *See Wiggins v. State Farm Fire & Cas. Co.*, 686 So.2d 218, 220 (Ala.1996); *see also Fortson v. St. Paul Fire & Mar. Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985) (holding that direct actions can include claims when "the liability sought to be imposed could be imposed against the insured.")

*Wheelwright Trucking*, 158 F.Supp.2d at 1301 (emphasis added). The above language from *Wheelwright* is problematical for several reasons. First, Section 27-23-2 of the Alabama Code requires that a plaintiff obtain a final judgment against an insured before suing an insurer, as referenced earlier. The Middle District has noted this truism post-

8

*Wheelwright*. *See Southern Pioneer Property & Cas. Ins. Co. v. Bennett*, 2010 WL 1416123, *3 (April 7, 2010) (noting that the Alabama Supreme Court "has consistently held that 'under Alabama law . . . an injured party cannot bring a direct action against the insurance carrier, absent a final judgment against its insured.'"). Next, Section 27-23-1, subtitled "When insurer's liability absolute," states:

> As to every contract of insurance made between an insurer and any insured by which such insured is insured against loss or damage *on account of the bodily injury or death by accident of any person for which loss or damage such insured is responsible*, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurer shall become absolute and the *payment of the loss shall not depend upon the satisfaction by the insured of a final judgment against him for loss, or damage, or death occasioned by the casualty*. No such contract of insurance shall be cancelled or annulled by any agreement between the insurer and the insured after the insured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.

Ala. Code 1975 § 27-23-1 (emphasis added). Because the statute allows for recovery from the insurer of the tortfeasor insured without first troubling the plaintiff with obtaining a final judgment against the insured, 27-23-1 is *indeed* a direct action statute, but *is only operable in situations involving damage "on account of the bodily injury or death by accident of any person for which loss or damage such insured is responsible*." *Id*. *Wheelwright Trucking*, it should be noted, was *not* such a case, but rather involved the sale of allegedly-defective trailers causing "lost profits and lost business opportunities," as revealed by the Supreme Court of Alabama after the case was remanded back to state court. *Liberty Mutual Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So.2d 466, 469 (Ala. 2002).

9

The third problem with *Wheelwright Trucking*'s holding that the above-referenced sections of the Alabama Code are "direct action" statutes is that the two cases that the Middle District cites in support of that notion do not appear to be on point. First, the *Fortson* language referenced by *Wheelwright Trucking* has a very different connotation when read within the context of the overall opinion, as mentioned earlier. Second, the Alabama state case mentioned, *Wiggins v. State Farm Fire and Cas. Co.*, 686 So.2d 218 (Ala. 1996), certainly does not stand for the proposition that other sections of the Alabama Code may be classified as "direct action" statutes in cases not involving bodily injury or death. In *Wiggins*, a female student ("Wiggins") at the University of Alabama was somehow injured by being hit in the face at a fraternity party, and then sued the tortfeasor. *Id*. at 219. The fraternity member failed to appear, and so a default judgment was entered against him. *Id*. After obtaining the default judgment, Wiggins attempted to add State Farm (the tortfeasor's insurer) as a defendant and to apply the proceeds of the insurance contract between the insured and State Farm to fulfill the default judgment under Ala.R.Civ.P. 69 and Sections 27-23-1 and 27-23-2 of the Alabama Code. *Id*. The trial court held that those authorities did not operate to allow the plaintiff's proposed course of action and instead stated that she must bring a separate independent action against State Farm. *Id*. The *Wiggins* Court started its analysis thusly:

> It is important to note that Wiggins has not sued State Farm. This Court, in *Insurance Company of North America v. Davis*, 274 Ala. 541, 150 So.2d 192 (1962), discussed this question and determined "that the legislature [in enacting § 12, Tit. 28, Code of Ala.1940, predecessor to § 27-23-1, -2, Ala.Code 1975] intended that all such proceedings must be brought against

the defendant in the action at law and the insurance company, as joint
respondents." 274 Ala. at 542, 150 So.2d at 194. Moreover, in *Davis* "it
[was] logically deduced that the [insurer by and through the] insured is a
'necessary party' under the rule that all persons having a material interest in
the litigation or who are legally or beneficially interested in the subject
matter of the suit and whose rights or interests are sought to be concluded
thereby are necessary parties." 274 Ala. at 543, 150 So.2d at 194.

*Wiggins*, 686 So.2d at 219-20. This rule of having the insured and the insurer in the action as joint respondents clearly does not equate into an expression that somehow the plaintiff in *Wiggins* could have sued the insurer directly, although a literal reading of Alabama Code Section 27-23-2 would have supported such a proposition *in that case* because it involved bodily injury, unlike the case currently before the undersigned or that in front of the Court in *Wheelwright*.[3] Furthermore, the *Wiggins* opinion supports the procedure employed by the plaintiffs in this action:

> In *Maness v. Alabama Farm Bureau Mutual Cas. Ins. Co.*, 416 So.2d 979
> (Ala.1982), this Court reasoned that "[o]nce an injured party has recovered
> *a judgment against the insured*, the injured party may compel the insurer to
> pay the judgment. The injured party, however, can bring an action against
> the insurer *only after he has recovered a judgment against the insured* and
> only if the insured was covered against the loss or damage at the time the
> injured party's right of action arose against the insured tort-feasor." 416
> So.2d at 981-82; *see also Fleming v. Pan American Fire & Cas. Co.*, 495
> F.2d 535, 540 (5th Cir. 1974); *Haston v. Transamerica Ins. Services*, 662
> So.2d 1138, 1139 (Ala. 1995).

*Id*. at 220 (emphasis added). The *Paca* Court's reliance on *Wheelwright Trucking*'s determination that Alabama Code § 27-23-2 is a blanket direct action statute, then, is also

---

[3] Recall that § 1332(c)'s definition of "direct action" mandates that the insured not be joined as a party defendant.

11

undermined by the above analysis. *See Paca, Inc. v. Nat'l Union Fire Ins. Co.*, 2007 WL 98722, *4 (M.D. Ala. Jan. 11, 2007) (referring to § 27-23-2 as "a provision which this Court has previously deemed a 'direct action statute.'").

Here in the Southern District of Alabama, a review of the case of *Stabler v. Transportation Ins. Co.*, No. 06-0237-WS-M, 2006 U.S. Dist. LEXIS 50540 (S.D. Ala. July 21, 2006) may be informative. In *Stabler*, albeit a decision which Judge Steele stated was "entered only to decide the motion or matter addressed" therein and "is not intended for official publication or to serve as precedent," the Court stated the now-familiar *Fortson* definition of direct action:

> With due recognition of the existence of credible precedents to the contrary, the Court adopts the definition of 'direct action' as articulated by the Eleventh Circuit in *Fortson* and by the old Fifth Circuit in *Hernandez* . . . That definition limits § 1332(c)(1) 'direct actions' to those in which an aggrieved plaintiff files suit against the wrongdoer's insurer without either joining the wrongdoer as a defendant or first obtaining a judgment against the wrongdoer.

*Id*. at *1, n. 7; *15-16. The *Stabler* opinion reinforces the undersigned's view that the current matter is not a direct action by noting the limitations on direct actions against insurers for the purpose of garnishing the available proceeds of a contract of insurance: "[i]ndeed, Alabama law prohibited Stabler from commencing garnishment proceedings against Transportation unless he first obtained a judgment against [the defendant]." *Id*. at *16 (citations omitted). The expressed holding was: "Because Stabler obtained a judgment against [the defendant] before initiating a garnishment action against [the defendant's] insurer, *which judgment was a precondition to said garnishment*, this case is

12

not a 'direct action' for § 1332(c)(1) purposes." *Id*. (emphasis added).[4]

### C. *Garnishment Proceedings as Independent Actions*

In their Memorandum in Support of [the] Motion to Remand (Doc. 7), the Armentrouts argue that the case should be returned to the Circuit Court of Mobile County for the additional reason that this garnishment action is not a separate and independent action, but is rather ancillary to the underlying action that the Armentrouts had against the Clemens defendants. (Doc. 7, p. 4.) In support of this contention, the Armentrouts cite "longstanding Alabama Supreme Court precedent finding that garnishments are not separate proceedings." (*Id*. at 5.) It is *federal* law, however, that dictates removability under 28 U.S.C. § 1441. *See Butler v. Polk*, 592 F.2d 1293, 1296 n.7 (5th Cir. 1979) (citations omitted) (stating that "the proper characterization of an action under [section] 1441 is essentially a matter of federal law"); *Stabler*, 2006 U.S. Dist. LEXIS 50540, at *19, n.7 (citing *Randolph v. Employers Mut. Liability Ins. Co.*, 260 F.2d 461, 463-64 (8th Cir. 1958) (noting that "federal law and not state law controls as to whether an action is

---

[4] It is also noteworthy that the district courts of Mississippi until recently had reached different conclusions on this issue. *Compare Boston v. Titan Indemnity Co.*, 34 F.Supp.2d 419, 423 (N.D. Miss. 1999) ("the Mississippi garnishment statute providing for the issuance of a writ of garnishment on a suggestion for garnishment filed by a judgment creditor, MISS.CODE. ANN. § 11-35-1, is the equivalent of a direct action statute") *with Freeman v. Walley,* 276 F.Supp.2d 597, 602 (S.D. Miss. 2003) ("the post-judgment garnishment situation presented here serves to further support this court's conclusion that what is here presented is not a 'direct action' to which § 1332(c)(1) is addressed.") In June of this year, following *Freeman*, the Southern District has again refused to remand a removed action based on a post-judgment writ of garnishment. *Mabins* v. *Alfa Insurance Company*, 2010 WL 2557743 (S.D. Miss. June 23, 2010) In *Mabins*, it is noted that after *Freeman* was decided "the Northern District of Mississippi has adopted [*Freeman's*] reasoning over the reasoning in *Boston* in two related cases." *Id*. at *3.

removable under 28 U.S.C. § 1441"); *Smotherman v. Caswell*, 755 F.Supp. 346, 348 (D. Kan. 1990) (citation omitted) ("We conclude that the characterization of garnishment actions for the purposes of removal should be a matter of federal law rather than a matter to be determined by construing individual state garnishment statutes.").

The Eleventh Circuit, moreover, reached a similar conclusion in *Webb v. Zurich Ins. Co.*, 200 F.3d 759 (2000) when it mentioned that a defendant in Alabama state court facing a similar motion to remand "removed the case to federal court alleging that the garnishment proceedings were a separate and independent cause of action" before noting that "a magistrate judge correctly denied [the] motion to remand the case." *Id.* at 760 (citing *Butler*, 592 F.2d). *Butler*, a case from the pre-split Fifth Circuit, specifically stated that the garnishment actions "are generally construed as independent suits, at least in relation to the primary action," before labeling them as "suits involving a new party litigating the existence of a new liability." *Butler*, 592 F.2d at 1295-96 (collecting cases). Chief Judge Steele of this Court has examined this very issue and decided to go along with the *Webb-Butler* line of precedent as well, as does the undersigned. *Stabler*, 2006 U.S. Dist. LEXIS 50540, at *18-19.

### D. *Whether ACIC is a "Defendant" Entitled to Removal*

The Armentrouts also make the argument that under 28 U.S.C. § 1441(a), garnishee ACIC is not a "defendant" entitled to removal, and therefore this cause must be remanded out of this Court. (Doc. 7, p. 2.) This argument, however, runs afoul of the Eleventh Circuit precedent referenced above, in that *Webb* and *Butler* both involved

14

actions that were removed into federal court by garnishees. Aside from this tacit authority from the Eleventh Circuit that garnishees are indeed defendants entitled to removal (because the garnishment proceeding is indeed a separate and independent cause of action), consider *Smotherman*, where the Court directly stated that "[s]ubsection (a) of section 1441 affords [the] garnishee . . . the basis for removal of the case." *Smotherman*, 755 F.Supp. at 348.

### E. Timeliness of the Removal

The Armentrouts also make the argument that, pursuant to 28 U.S.C. § 1446(b), "this case should be remanded because it has been pending for more than one (1) year." (Doc. 6, p. 2; Doc. 7, p. 7.) While it is true that under that statute, "a case may not be removed on the basis of jurisdiction conferred by section 1332 . . . more than 1 year after commencement of the action," the operative commencement date of this garnishment action is February 22, 2010, the date on which the Armentrouts filed the process of garnishment. (Doc. 2-3, "Process of Garnishment," p. 1.) *See Stabler*, 2006 U.S. Dist. LEXIS 50540, at *20 ("[T]he operative commencement date is . . . the date on which [the plaintiff] filed [the] process of garnishment[], not the date on which the underlying . . . proceedings began.").

### F. Federal Abstention and Comity

Appearing for the first time in the Armentrouts' Reply Brief in Support of Motion to Remand (Doc. 15) is the argument that "[s]hould this Court find that jurisdiction is somehow proper, Plaintiffs respectfully submit that the Court should abstain from

15

exercising jurisdiction and remand the entire action . . . in the interest of comity, federalism[,] and judicial economy." (Doc. 15, p. 8.) The cases cited by Plaintiffs in support of this proposition, however, typically involved pending or concurrent state court actions, unlike the situation before the undersigned, where a final judgment has been entered against the Clemens defendants in state court and a separate garnishment proceeding has subsequently been filed. Regardless, the Eleventh Circuit, in *31 Foster Children v. Bush*, 329 F.3d 1255 (2003) mentioned:

> The Supreme Court has said that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Col[orado] River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). But 'virtually' is not 'absolutely,' and in exceptional cases federal courts may and should withhold equitable relief to avoid interference with state proceedings. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989).

*Id*. at 1274. Where, as here, there is no possibility of interfering with state proceedings, it seems highly implausible that the garnishment proceeding before the undersigned would fall into the category of "exceptional cases" which would counsel federal abstention mentioned by the Supreme Court in *New Orleans Pub. Serv., Inc.*

### G.  A Controversy Exists Between the Parties

The Armentrouts make one final argument in favor of remand, although it again appears for the first time in their Reply Brief in Support of Motion to Remand (Doc. 15). Therein, the Armentrouts assert that ACIC is not a "defendant" entitled to removal because no case or controversy existed at the time of removal, as under Alabama law,

16

"the issue between a plaintiff and a garnishee is not made up for trial unless and until (1) the garnishee answers the process of garnishment, and (2) the plaintiff controverts the garnishee's answer within thirty days after notice of the filing of the answer he believes to be untrue. (Doc. 15, p. 17.) In support of this contention, the Armentrouts cite a Nineteenth-Century decision of the Supreme Court of Alabama, *Hurst v. Home Protection Fire Ins. Co.*, 81 Ala. 174, 1 So. 209 (1887). *Hurst*, however, does not support the sort of far-reaching procedural bar suggested by Plaintiffs. The relevant portion of that opinion merely states:

> When an answer in garnishment is full and complete, and leaves nothing for the ascertainment by events to transpire afterwards, then, unless the truth of the answer is controverted, or some other issue is formed upon it, the case is one for simple judicial determination.

*Id*. at 209-10. Notably absent from this language is any statement from Alabama's highest court that an answer must be had for a garnishment proceeding to become a "ripe" action that involves a case or controversy between the parties. The *Hurst* opinion *does* provide, however, that "[i]f the admitted indebtedness has not matured, or if the debt, to aid the collection of which the garnishment is sued out, has not been reduced to judgment, then the garnishment suit cannot be made effective until the particular event happens," explaining that "[t]he statute does not provide for such cases." *Id*. at 210 (citations omitted). In the situation before the undersigned, the Armentrouts *have* reduced the "debt" owed to them by the Clemens defendants to a judgment, and thus the garnishment proceeding is "effective," following the *Hurst* Court's reasoning.

17

Even if *Hurst* did read as the Armentrouts would have this Court believe, its reasoning based on Alabama statutes would have no application in this forum. As this Court has already remarked in *Stabler*, "[a] state statute cannot divest a federal court of diversity jurisdiction." *Stabler*, 2006 U.S. Dist. LEXIS 50540, at *22 (citing *Superior Beverage Co. v. Schieffelin & Co.*, 448 F.3d 910, 917 (6th Cir. 2006)).[5] Numerous other federal courts have echoed this viewpoint. *See, e.g., Nationwide Investors v. Miller*, 793 F.2d 1044, 1045 (9th Cir. 1986) (repeating the Ninth Circuit's former holding that "the characterization of a garnishment proceeding is a question of federal law."); *Lewis v. Blackmon*, 864 F.Supp. 1, 4 (S.D. Miss. 1994) (stating that, in the context of a garnishment proceeding, "[r]emoval is a procedural question, thus federal law governs."); *Dr. Macht, Podore & Associates, Inc. v. Girton*, 392 F.Supp. 66, 67 (D.C. Ohio 1975) (adopting view that "the nature of a garnishment proceeding should be determined by federal law," albeit with some non-controlling deference to the state characterization).

### III. Conclusion.

For all of the foregoing reasons, it is the undersigned's recommendation that Plaintiffs' Motion to Remand (Doc. 6) be **DENIED**.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

---

[5] Also recall the discussion, *supra*, of the various Eleventh Circuit authorities explaining that removability is a matter of federal, not state, law.

Judge.

**DONE** this 22nd day of July, 2010.

                              s/WILLIAM E. CASSADY
                              **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. *Objection*. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[6] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).